**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

RANDY LEE,

        Plaintiff,

vs.

DANIEL DAWSON, et al.,

        Defendants.

No.  C17-4073-LTS

**MEMORANDUM
OPINION AND ORDER**

_____

## I.    INTRODUCTION

This case is before me on a motion (Doc. No. 50) for summary judgment by defendants James Fouts, then Assistant Chief of Police for the City of Onawa, and the City of Onawa (together, the municipal defendants), and a motion (Doc. No. 51) for summary judgment by defendants Daniel Dawson and the State of Iowa (together, the state defendants).   Plaintiff Randy Lee has filed a resistance (Doc. No. 63) and the defendants have filed replies.  *See* Doc. Nos. 64-65.  I find that oral argument is not necessary.  *See* Local Rule 7(c).

## II.    PROCEDURAL BACKGROUND

This action stems from the execution of a search warrant on September 13, 2015. Lee initiated this lawsuit on September 11, 2017, by filing a petition (Doc. No. 3) in Iowa District Court for Monona County against the municipal defendants.  On September 12, 2017, Lee filed an amended petition (Doc. No. 3-1) against the same defendants.

On November 27, 2017, he added the state defendants.  *See* Doc. No. 3-2.  He also identified the following counts for the first time:

- Count I – Procedural and Substantive Process – Iowa State Constitution Article I, § 8 Against All Defendants

- Count II – Procedural and Substantive Due Process – Iowa State Constitution Article I, §§1 and 9 Against All Defendants

- Count III – Violation of Plaintiff's Federal Constitutional Rights – United States Constitution 2nd and 4th Amendments

Doc. No. 3-2. The municipal defendants removed the case to this court on December 13, 2017, based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See* Doc. No. 1. The state defendants consented to the removal. *See* Doc. No. 9.

Lee filed an amended complaint (Doc. No. 26) on March 20, 2018. The amended complaint, brought pursuant to 42 U.S.C. § 1983, alleges that Dawson and Fouts conducted a search on September 13, 2015, pursuant to a search warrant that lacked probable cause. Doc. No. 26 at 2. Lee asserts the following claims:

- Count I – Unreasonable Search and Seizure[1]
- Count II – Second Amendment – U.S. Constitution and Article I, Section 9 – Iowa Constitution

*Id.* at 5-6.

The state defendants filed a pre-answer motion (Doc. No. 28) to dismiss, which I granted in part and denied in part. I granted it as to: (1) Lee's § 1983 claims against the state defendants based on alleged violations of the United States Constitution and (2) his claim in Count I alleging a violation of article I, section 8 of the Iowa Constitution based on the alleged lack of probable cause to support the search warrant. I denied it as to the remaining state law claims in Count I and Count II, meaning the following counts are at issue in this motion as to both defendants:

---

[1] In the text of this count, Lee alleges that the search and seizure violated the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. He also alleges that three hours of interrogation violated his rights to enjoy life and liberty and to safety and happiness under article I, section 1 of the Iowa Constitution.

- Count I
    - A violation of article I, section 1 of the Iowa Constitution
    - A violation of article I, section 8 of the Iowa Constitution based on an alleged unauthorized search of his residence and seizure of his service weapon.
- Count II - a violation of article I, section 9 of the Iowa Constitution based on seizure of his service weapon

Both counts also consist of § 1983 claims against the municipal defendants based on alleged violations of the Second and Fourth Amendments.

## III.   RELEVANT FACTS

The following facts are undisputed for purposes of defendants' motions for summary judgment unless otherwise noted:[2]

Prior to the alleged incident that underlies the law enforcement action in this case, Lee and the victim had a romantic relationship. Fouts was aware of this relationship because he had discussed it with the victim in the past. Fouts also has a close relationship

---

[2] Lee responds to each of defendants' statements of fact as follows: "Plaintiff disputes Onawa [Defendants' Statement of Undisputed Material Facts] #7, 10, 12, 13, 14 and 16 as more fully explained in Plaintiff's Statement of Material Facts" and "Plaintiff disputes State [Defendants' Statement of Undisputed Material Facts] #6, 7, 8 and 9 as more fully explained in Plaintiff's Statement of Material Facts." Lee's response fails to comply with Local Rule 56(e) and 56(b). Local Rule 56(e) requires appendices to be numbered consecutively at the bottom of each page and all references to supporting documents in a brief or statement of material fact be to a specific page number in an appendix. Local Rule 56(b) requires that each statement of material fact not expressly admitted be supported by references to specific documents in support of the party's refusal to admit the statement. The state defendants ask those facts to be deemed admitted. *See* Local Rule 56(b) ("The failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact."). These facts concern whether Lee's firearm was seized, who seized it, how long Lee's interview lasted, who was present, whether Lee was told he was free to leave during the interview and a civil protective order entered on October 14, 2015, prohibiting Lee from possessing a weapon other than a service weapon in the course of his official duties. *See* Doc. No. 51-2 at 2-3. In discussing these facts, I will note Lee's position and whether or not the record supports it.

with the victim's family and worked with the victim's mother. Doc. No. 64 at 1. Lee's supervisor, Monona County Sheriff Jeff Pratt, was also aware of the tumultuous relationship and, after speaking to the victim or her family concerning an incident in June 2015, instructed Lee not to have contact with the victim or her family. *Id.* at 1-2. Shortly before the incident in this case, Lee alleges his vehicle tires were slashed at his personal residence and that he had considered seeking a protection order against the victim, believing she was the culprit. *Id.* Fouts denies knowledge of this incident or that Lee had personal and professional issues with one of Fouts' family members regarding a high-speed chase in which Lee and the relative were allegedly involved.

The incident in this case arose on September 13, 2015, when the victim contacted an individual she had seen the previous day and reported that she and Lee had non-consensual sex. Doc. No. 63-1 at 3. The victim also told her friend. *Id.* The three met and contacted the victim's mother, who met up with them. *Id.* at 4. The victim's mother then called Monona County Deputy Sheriff Jeremy Bellis and reported the incident. Bellis contacted his supervisor, Sheriff Pratt, who instructed him to contact Fouts. Fouts was off-duty but met Bellis at his personal residence and discussed the claims of non-consensual sex between the victim and Lee. Doc. No. 63-1 at 4. Bellis and Fouts went to go meet the victim and her mother. *Id.*

Fouts met with the victim privately and recorded the interview, which lasted approximately 25 minutes. *Id.* He arranged for the victim to undergo a sexual assault examination at Mercy Medical Center in Sioux City, Iowa. *Id.* Fouts also informed the victim she would need to provide a written statement, however he never obtained one. Doc. No. 64 at 6. Lee alleges that during the interview, Fouts made multiple comments to the victim that were inappropriate and demonstrated animus towards Lee. Defendants deny these comments for lack of support by the cited materials, which is a transcript of the interview. The alleged comments or subjects of the comments include:

- Lee has a known drinking and drug problem

- It was Fouts' responsibility to investigate and charge Lee and that a DCI agent would not be needed because it was a cut and dry case

- Various comments about Lee's state of mind

- Various comments that coaxed and developed facts that the victim did not report

- Comments about the victim's and Lee's relationship, such as Lee was controlling the victim

- Fouts had known the victim all her life, so she should feel comfortable talking to him

- Fouts had his own relationship issues that the victim and her mother knew about

*Id.* at 5-6.[3]

Fouts consulted the Chief of Police for the City of Onawa and was directed to contact the Iowa Department of Criminal Investigation (DCI). Fouts also contacted Sheriff Pratt and met with the County Attorney. Fouts expressed his opinion that search warrants should be obtained. Doc. No. 64 at 2. Three DCI agents arrived, including Dawson. Fouts shared the interview recording with him.[4] Fouts did not provide Dawson with a written report or investigation, although he states he would typically do so. Doc. No. 65-1 at 3-4. Fouts denies that he discussed the relationship history between Lee and the victim. Doc. No. 64 at 3. Dawson states Fouts told him that Lee and the victim had an on-again, off-again relationship. Doc. No. 65-1 at 3. Dawson did not conduct any interviews or inquire about the victim's criminal history or credibility. Doc. No. 54 at 3; Doc. No. 65-1 at 4-5. Dawson drafted the search warrant applications for Lee's person and residence. He states he did so with the assistance of Fouts. Doc. No. 65-1 at 5.

---

[3] As noted above, the interview was transcribed and speaks for itself. *See* Doc. No. 63-3 at 141-48.

[4] Dawson does not indicate whether he listened to the recording. *See* Doc. No. 65-1 at 3.

5

The application included a single affidavit. *Id.* Fouts did not review the search warrant applications or affidavit. Doc. No. 64 at 3.

Lee takes issue with several facts alleged in the affidavit, arguing that they are inconsistent with the victim's recorded interview. The municipal defendants deny nearly all of Lee's assertions as unsupported by the cited materials. *See* Doc. No. 64 at 3-4. The state defendants note that many of the victim's statements are ambiguous, citing to quotations from the transcript of the interview. Doc. No. 65-1 at 6-10. According to Lee, the inconsistencies consist of the following:

- The affidavit alleges that Lee used his service weapon to threaten the victim and wanted the victim to shoot/kill him with the service weapon. The victim also reported there would be a second firearm located on a night stand near Lee's bed. However, the victim stated she did not believe that firearm was Lee's service weapon and the only firearm was located near Lee's bed. The victim also stated numerous times that she did not feel threatened by the firearm and that Lee did not point or threaten her with it. *See* Doc. No. 63-1 at 9.

- The affidavit alleges that Lee forced the victim to drive them to her parents' house to retrieve more alcohol or that Lee forced the victim to return to his residence. However, the victim never stated that Lee forced her to drive them anywhere and admitted that Lee believed he was in danger.

- The affidavit alleges that Lee consumed a bottle of wine and while he was consuming it, became mad at the victim and threw a wine glass against the back door. However, the victim stated that Lee threw the empty wine glass the following morning or afternoon as she was leaving. She also never stated the wine glasses were thrown at her or that she felt threatened.

- The affidavit alleges that Lee forced the victim to remove her clothing and made her get into his bed at night, but they did not have sex. The victim never stated she was forced to remove her clothing, but that she did not want to have sex because Lee was drunk so they went to sleep. The victim woke up the next morning and Lee was going through her phone.

- The affidavit alleges that Lee's tires were slashed and he had installed security cameras. However, this information did not come from the victim

as indicated in the affidavit because she never mentioned it.[5]

- The affidavit alleges that Lee inserted his penis into the victim's vagina and began having sex with her and the victim did not want to have sex, so she headbutted Lee. It also alleges that Lee's nose was bleeding and he laughed and continued sexually assaulting the victim. However, the victim never stated that Lee's penis was inserted into her vagina or that Lee laughed when she headbutted him and continued to have sex with her against her will. The victim did state that she "latched onto him" during sex and never stated that the sex was not consensual.[6] The victim stated she did not want to continue their relationship of having sex and getting emotionally hurt.

- The affidavit does not report the victim's concessions or that fact that she stated she did not expect her allegations to go "to this level." She also did not intend for her mother to contact the police and stated she did not want to submit to a sexual assault examination.[7]

Doc. No. 63-1 at 8-14.

---

[5] The state defendants note that Dawson's affidavit indicates he obtained the information therein from Fouts. Doc. No. 65-1 at 8.

[6] The state defendants note that the victim said Lee "smiled" after she headbutted him and she was unsure whether Lee penetrated her vaginally, but he did penetrate her anally. Doc. No. 65-1 at 9. They also note the victim stated she did not want to have sex with Lee and felt he forced himself on her. *Id.*

[7] The state defendants note that the victim agreed to a sexual assault examination and the other statements cited by the victim are ambiguous. Doc. No. 65-1 at 9. Indeed, Lee reads into other aspects of the interview stating that the victim did something for a particular reason when that reason is not apparent from the interview itself. *See* Doc. No. 63-1 at 14 ("[The victim] stayed at Plaintiff's residence, went through Plaintiff's cell phone and called Plaintiff's current girlfriend to brag that she had sex with Plaintiff."; "[The victim] made concessions regarding her motivations to falsely accuse Plaintiff of rape because Plaintiff threatened to help the father of [the victim's] child to get custody if [the victim] did not stop calling his current girlfriend."). The state defendants note that the statements cited in support of these assertions reflect that the victim called "the girl he's been talking to" and that she believed Lee would take steps to have the custody of her child taken away if she reported the sexual assault or continued to contact his current girlfriend. *See* Doc. No. 65-1 at 10. The affidavit is in the record and speaks for itself. *See* Doc. No. 63-4 at 35-36.

At approximately 8:30 p.m., Fouts and Dawson went to a state court magistrate's residence to present the search warrant applications. *Id.* at 14. The magistrate did not ask them any questions.[8] *Id.* Dawson marked that an investigative and police report was attached to the search warrants, but only his affidavit was attached. Lee also claims that Dawson did not inform the magistrate that Fouts was the only source of information supporting the warrant and did not inform the magistrate about Fouts' credibility. Doc. No. 63-1 at 15. The affidavit clearly stated how the information was obtained, including that Dawson obtained the information from Fouts, who obtained it from the victim. Doc. No. 65-1 at 11. The state defendants also note that Lee cites nothing in the record indicating any issue with Fouts' credibility. *Id.* Fouts and Dawson did not inform the magistrate judge that the search warrant endorsement was not properly completed because she did not mark paragraphs 4, 5, or 6 relating to probable cause. Dawson notes he did not point out the scrivener's errors because he did not notice them at the time. Doc. No. 65-1 at 12. Fouts cites his deposition in which he explained that he would not have seen that part of the application because it is turned into the clerk's office and the officers would have walked out only with the search warrants. Doc. No. 64 at 4 (citing Doc. No. 63-3 at 6).

At approximately 8:45 p.m., Lee was working on-duty as a uniformed Sheriff's Deputy when he received a call from Sheriff Pratt asking him to report to the Monona County Law Enforcement Center. Doc. No. 63-1 at 15. Lee contends Sheriff Pratt and DCI special agents executed the search warrant on his person and seized his service weapon, officer belt and cell phone. *Id.* The state defendants note that Lee testified at his deposition that he surrendered his service weapon to Sheriff Pratt in the presence of the special agents. They state the special agents did not seize his service weapon pursuant to a warrant and that the weapon (which was owned by his employer) was returned to

---

[8] The state defendants note that Dawson and Fouts could not recall what questions, if any, the magistrate asked. Doc. No. 65-1 at 11.

Lee when he eventually returned to work after being placed on administrative leave. Doc. No. 65-1 at 12-13. The municipal defendants agree that the service weapon was not seized pursuant to a warrant. Doc. No. 64 at 5. Lee contends that a buccal swab and photographs of him were taken after an interrogation. Doc. No. 65-1 at 16. Defendants deny that it was an interrogation, stating that it was a voluntary interview. *See* Doc. Nos. 64 at 5; 65-1 at 13, 14.

Lee was questioned by DCI Special Agents Chad Fiedler and Phil Kennedy. Doc. No. 51-2 at 3. Lee claims the interview lasted an unreasonable amount of time (two hours) and that the special agents advised him he should not obtain an attorney. Doc. No. 63-1 at 17. Defendants state it lasted just under two hours. Doc. Nos. 64 at 5; 65-1 at 14. They also deny that Lee was told not to obtain an attorney for lack of supported evidence. Doc. Nos. 64 at 5; 65-1 at 14-15.[9] Lee claims that he did not learn of the allegations against him until halfway through the interview. *Id.* Defendants deny this, stating Lee knew why he was being interviewed because the special agents discussed the nature of the interview at the beginning. Doc. No. 65-1 at 15.[10] Neither Fouts nor Dawson were present during the interview. *Id.* Lee was told he was free to leave at any time. Doc. No. 51-2 at 3.

Lee claims he did not learn about the search warrant until he requested that defendants collect evidence from his residence and person. Doc. Nos. 63-1 at 17; 65-1 at 15. The agents informed Lee the search warrant was sealed, but that they would

---

[9] The interview is transcribed and speaks for itself. *See* Doc. No. 63-3 at 67-140.

[10] The transcript indicates the agent told him, "we're here to talk to ya about some allegations that were made um reference last night and today." Doc. No. 63-3 at 68. After getting Lee's basic information, the agent said, "Well obviously you know why we're here" and Lee responded, I was gonna get a protection order or a no contact order on her." *Id.* at 70-71. The transcript indicates that mid-interview Lee asks "Am I being accused of rape? Is that . . . is that what uh . . . what this issue is or . . ." and the special agent responds, "Yeah. That is what she is accusing you of. That this was not consensual," to which Lee responds, "Holy fuck." Doc. No. 63-3 at 103.

provide copies to Lee. Lee received the endorsed search warrant without a copy of the affidavit or supporting documentation. Doc. No. 65-1 at 13. He also received the receipt inventory for property seized from his person. *Id.* at 14. Lee claims the agents did not advise him of the scope of the search warrant or the items authorized to be seized from the search warrant. *Id.* The state defendants deny this, noting that the documents cited by Lee indicate the special agents were making copies of the search warrants to provide to Lee. Doc. No. 65-1 at 16. At the end of the interview, Lee asked if the officers were going to seize his other, non-service weapon and the special agents responded, "I think so." *Id.* Lee asserted his Second Amendment rights and the agents directed Lee to inquire with Sheriff Pratt. *Id.* After the interview, Lee was placed on administrative leave effective immediately. *Id.* at 17-18. He signed a letter acknowledging this at approximately 10:30 p.m. on September 13, 2015. *Id.* at 18.

At approximately 9:30 p.m. that evening, Dawson, Fouts and another Onawa police officer executed the warrant on Lee's residence. Doc. Nos. 65-1 at 13; 51-2 at 2. They seized bed sheets, a comforter, broken glass, a trail camera and a Glock 22 pistol. Doc. No. 65-1 at 16-17. Fouts and Sheriff Pratt were responsible for receiving and logging the evidence obtained from the search warrants. Doc. No. 64 at 5.

With regard to the inventory from the search warrant, the return of service for Lee's residence and vehicle was not endorsed by the magistrate. Doc. No. 65-1 at 17. Dawson documented, signed and filed with the court the following three items seized from Lee's person: (1) cell phone, (2) buccal swab and (3) photographic images of injuries. *Id.* The search warrant inventory and return of service for Lee's person was endorsed by the magistrate. *Id.* Lee claims that the DCI special agents and Sheriff Pratt executed the search warrant on Lee's person and seized his service weapons and magazines. Doc. No. 63-1 at 18-19. Defendants deny that Lee's service weapons were part of the search warrant and state that Lee surrendered them to Sheriff Pratt. Doc. Nos. 64 at 5, 6; 65-1 at 18. Lee notes that the search warrant inventory provided to the

magistrate and filed with the court does not identify Lee's service weapons. Doc. No. 63-1 at 19.

None of the evidence (including the victim's sexual assault examination results, Lee's buccal swab or bed sheets) was submitted for testing and Lee's cell phone was never searched for evidence. Doc. No. 63-1 at 20. The state defendants note that the buccal swab and sheets were not submitted for testing because Lee admitted that he had sex with the victim. Doc. No. 65-1 at 20. Dawson could not recall whether Lee's cell phone was searched. *Id.*

Lee claims Dawson concluded the investigation around October 28, 2015, and submitted the investigation report to the County Attorney, who decided not to issue charges because Lee and the victim engaged in consensual sex and the victim was not credible. Doc. No. 63-1 at 21. The municipal defendants note that the matter was referred to the Attorney General and no reasons were provided for the decision not to pursue charges. The state defendants agree that the cited documents do not indicate why charges were not filed. Doc. Nos. 64 at 7; 65-1 at 21-22.

On September 14, 2015, Lee applied for a protection order against the victim. On September 16, 2015, the victim applied for a protection order against Lee. Doc. No. 63-1 at 21. On October 14, 2015, a judge of the Iowa District Court for Monona County found that both parties lacked credibility. Doc. No. 65-1 at 23. Lee was permitted to possess and use firearms and ammunition, but only for use in the performance of his official duties. Doc. No. 63-1 at 22. Lee's personal property was returned to him on October 31, 2016. Doc. No. 63-1 at 21. He claims his cell phone and trail camera were never returned to him. Doc. No. 63-1 at 21. Defendants deny this.

On October 19, 2015, Sheriff Pratt provided Lee with a letter outlining the terms and conditions for Lee to return to work from administrative leave. Lee was required to submit to a psychiatric examination, obtain clearance from a psychiatrist and complete a drug and alcohol program in order to be considered for reinstatement. Doc. No. 63-1 at 22. He also could not have further problems with the victim or any witnesses from the

case.  *Id.*  Sheriff Pratt also arranged to have Lee's service weapon kept in a lock box for him to pick up when reporting for duty and he was to return the weapon to the lock box at the end of his shift.  *Id.*  Lee submitted to a substance abuse assessment and mental health evaluation wherein he was cleared to return to work.  *Id.*  He returned to work on October 31, 2015 and complied with the restrictions regarding his service weapon.  *Id.* at 23.  Lee resigned on November 23, 2015.

## IV.    SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "the substantive law will identify which facts are material."  *Id.*  Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not.  *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question."  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).  Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V.     ANALYSIS

### A.     *Article I, Section 1 of the Iowa Constitution*

Lee claims his right to enjoy life, liberty, safety and happiness (as guaranteed by article I, section 1 of the Iowa Constitution) was violated when he was subjected to "three

hours of interrogation." *See* Doc. No. 26 at ¶ 32. He also alleges for the first time in his resistance to the motions for summary judgment that his *Miranda* rights were violated because they were never read to him. *See* Doc. No. 63 at 14-15. This argument will not be considered as it was not alleged in Lee's amended complaint. *See* Doc. No. 26; *Taha v. Engstrand*, 987 F.2d 505, 507 (8th Cir. 1993) (concluding that district court justifiably ignored claims made in response to summary judgment that were not made in the complaint); *N. States Power Co. v. Fed. Transit Admin*, 358 F.3d 1050, 1057 (8th Cir. 2004) (holding that a plaintiff may not "manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment").

It is undisputed that Lee was interviewed for approximately two hours by two DCI special agents on the evening of September 13, 2015. *See* Doc. No. 63-1 (in which Lee states he was subjected to interrogation lasting over two (2) hours); Doc. No. 65-1 at 14 (in which the state defendants note the documents cited by Lee reflect that the interview lasted just under two hours); Doc. No. 63-4 at 68, 140 (in which the transcript of Lee's interview states it began at 7:56 p.m. and ended at 9:54 p.m.). Neither Dawson nor Fouts were present for the interview. *See* Doc. No. 63-3 at 68. The DCI agents also informed Lee he was free to leave at any time. *Id.* Defendants argue they are entitled to summary judgment based on their lack of participation in this event.

The inalienable rights clause (article I, section 1 of the Iowa Constitution) states: "All men and women are, by nature, free and equal, and have certain inalienable rights – among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness." Iowa Const. art. I, § 1. The protections under this clause are not absolute and are "subject to reasonable regulation by the state in the exercise of its police power." *Honomichi v. Valley View Swine, LLC*, 914 N.W.2d 223, 235 (Iowa 2018) (citing *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 176 (Iowa 2004)). "Police power refers to the legislature's broad, inherent power to pass laws that promote the public health, safety, and welfare."

*Honomichi*, 914 N.W.2d at 235 (quoting *Gravert v. Nebergall*, 539 N.W.2d 184, 186 (Iowa 1995)). The court uses a two-step analysis in discussing these rights:

> To justify the state in thus interposing its authority on behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

*Gravert*, 539 N.W.2d at 186.

I find no violation of Article I, section 1 of the Iowa Constitution based on the undisputed facts. Neither Fouts nor Dawson were involved in the interview. *See Bailey v. Lancaster*, 470 N.W.2d 351, 359 (Iowa 1991) ("Officers who take no part in the alleged acts of misconduct are entitled to escape liability as a matter of law."). Moreover, Lee's only dispute (as alleged in the amended complaint) is based on the length of time of the interview. Given that the undisputed evidence shows that Lee (a law enforcement officer himself) was told he was free to leave the interview at any time and chose not to exercise that right, I find that he voluntarily submitted to the interview. As a result, there can be no constitutional violation. Defendants are entitled to summary judgment on this claim.

**B.      *Article I, Section 8 of the Iowa Constitution***

Lee alleges in Count I that defendants violated his rights under article I, section 8 of the Iowa Constitution when they searched his residence and seized his duty weapon. *See* Doc. No. 26 at ¶¶ 31 and 32. Specifically, he alleges that: (1) the warrant lacked probable cause without an endorsement regarding the complainant's reliability,[11] (2) it

---

[11] I dismissed Lee's other claim alleging a violation of article I, § 8 based on the alleged unreliability of the search warrant due to the complainant's credibility and certain technical deficiencies as to the state defendants. *See* Doc. No. 39 at 15. The municipal defendants argue this holding should apply equally to them. *See* Doc. No. 50-2 at 5.

authorized only the search of his person, not his residence (3) his service weapon was unlawfully seized. *Id.* at ¶ 22.

> Article I, section 8 of the Iowa Constitution provides:
>
> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.

Iowa Const., art. I, § 8.

With regard to the seizure of the weapon, defendants argue that Dawson and Fouts did not seize Lee's service revolver when executing the search warrant, but that Sheriff Pratt directed Lee to hand it over. *See* Doc. No. 51-3 at 9 ("No, I did not seize his service revolver . . . That would have been administrative decision with the sheriff that night."); 21-22 (in which Lee describes that Sheriff Pratt asked for his service weapon upon Lee arriving to work and Lee handed it over). As evidence that the service weapon was seized pursuant to a search warrant, Lee cites a "receipt of property." *See* Doc. No. 63 at 13 (citing List of Items Seized, ONAWA 0474).[12] He also states that he was not placed on administrative leave until after the search warrants were executed and he had been interrogated, which he contends weighs in favor of a finding that his work property was seized in relation to the search warrant of his person. Regardless of whether Lee's service weapon was seized pursuant to a warrant or not, it was not seized by either of the defendants. It is undisputed that the weapon was turned over to – or seized by – Lee's employer, Sheriff Pratt of the Monona County Sheriff's Office. Neither Pratt nor the

---

[12] The foundation for the ONAWA 0474 exhibit (Doc. No. 63-4 at 53) is unclear. It is not a form and does not contain a date or signature. It lists 13 items (including Lee's Smith & Wesson service weapon), notes that Lee's AR 15 service weapon was secured in cabinet #1 and lists the victim's cell phone number. The receipts of property from the search warrants do not list either of Lee's service weapons (a Smith & Wesson H&P .45 caliber handgun and an AR 15). *See* Doc. No. 51-3 at 40, Doc. No. 63-4 at 51. The ONAWA 0474 exhibit is in the same font as Fouts' written report, but neither document references the other. *See* Doc. No. 63-4 at 3-11. Neither defendant addresses the admissibility of this evidence in their replies.

county are named as defendants in this lawsuit. As such, Lee's claim against defendants of a violation of article I, § 8 of the Iowa Constitution based on seizure of his service weapon is without merit. Defendants are entitled to judgment as a matter of law on this aspect of Count I.

With regard to the alleged unconstitutional search of Lee's residence, defendants previously sought to have this claim dismissed by submitting the search warrant for his residence and related application materials. *See* Doc. No. 28-1 at 14 (citing Exhibit A (Doc. No. 28-2)). Lee objected to consideration of these materials on a motion to dismiss and argued that Exhibit A was "not the same search warrant served on Lee." Doc. No. 30-1 at 2. Because the amended complaint referred to only one search warrant and Lee denied that Exhibit A (containing the search warrant for his residence) was part of the warrant served on him, I declined to address the issue at that time. Defendants have now submitted those same materials in support of the current motion (Doc. No. 51-3 at 28-47). It is undisputed that there are two separate warrants signed by the magistrate (one for Lee's person and one for his residence) and that the same affidavit was used to procure both. *See* Doc. No. 63-1 at 7-8. Lee no longer challenges the search of his residence based on the alleged lack of a search warrant for the residence. Rather, he relies on his argument that the warrants lacked probable cause.[13]

Lee argues the warrants lacked probable cause without the endorsement regarding the victim's and Fouts' reliability. Doc. No. 63 at 6. He then goes on to argue why the information from the victim was unreliable. Additionally, he argues that Fouts did not provide reliable information because he harbored alleged animus towards Lee. *Id.* at 8,

---

[13] Lee also introduces new allegations that are not included in his amended complaint. *See* Doc. No. 26. These include allegations that defendants intentionally and knowingly or recklessly provided false information to obtain the search warrants (a *Franks* violation) and that Lee was wrongfully deprived of his seized property for more than a year and continues to be deprived of his cell phone. *See* Doc. No. 63 at 8, 12, 14. Again, new allegations will not be considered. *See Taha*, 987 F.2d at 507; *N. States Power Co.*, 358 F.3d at 1057.

11. Lee also cites technical deficiencies in the warrant. *Id.* Lee's amended complaint (Doc. No. 26) alleges:

- The warrant was based on a complaint by a person Dawson and Fouts knew to be unreliable having made prior untruthful allegations concerning Lee

- The search warrant did not cite any corroborative evidence to support the claim made by the unreliable source

- The statement from the alleged victim was so unreliable it was not attached as a reliable source to the search warrant documents

- Fouts took the statement from the unreliable source and neither he nor Dawson did anything to investigate or verify the untruthful allegation

- The warrant referred to Exhibit B, but no such exhibit was attached

- The endorsement is incomplete and nonsensical. Paragraph 4 did not identify the party providing the information upon which the search warrant was based and failed to identify the source that was alleged to be reliable

- Paragraph 5 of the endorsement was not completed such that the judge signing the search warrant actually made no finding of probable cause

- Paragraph 6 of the endorsement was not completed

Doc. No. 26 at 3-4. Because Lee did not allege that the affidavit contained knowingly and intentionally false or recklessly made statements or that Fouts had alleged animus towards Lee, I will not consider these arguments. *See Taha*, 987 F.2d at 507 (concluding that district court justifiably ignored claims made in response to summary judgment that were not made in the complaint).

My previous order (Doc. No. 39) on the state defendants' motion to dismiss addressed Lee's arguments as to the reliability of the information in the affidavit and the

technical deficiencies.[14] I found that nothing in the four corners of the search warrant application raised concerns regarding the reliability of the complainant's allegations and that "the issuing judge 'had a substantial basis for concluding probable cause existed' absent the endorsement that contained the allegedly false statement."[15] Doc. No. 39 at 15 (quoting *State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997)). *See State v. Shanahan*, 712 N.W.2d 121, 132 (Iowa 2006) ("We do not attempt to independently determine probable cause but rather 'merely decide whether the issuing judge had a substantial basis for concluding probable cause existed.'").

The test for probable cause is: "whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there." *State v. Weir*, 414 N.W.2d 327, 330 (Iowa 1987). The judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," probable cause exists. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Even though the magistrate need not make express findings of credibility when a search warrant affidavit relies on hearsay from a named informant, factors such as the veracity and basis of knowledge of such an informant are still relevant,

---

[14] With regard to the endorsement, I noted that it was necessary only when the informant was not named in the application and affidavits. Doc. No. 39 at 13. Because the victim was named in the affidavit, I found that the endorsement was not critical to the probable cause determination. *Id.* I went on to consider the reliability of the information according to seven factors identified by the Iowa Supreme Court. *Id.* at 13-14 (citing *State v. McNeal*, 867 N.W.2d 91, 102-03 (Iowa 2015)).

[15] That allegedly false statement was in paragraph 4 of the endorsement, which indicates that the informant has given reliable information on previous occasions. Doc. No. 39 at 12 ("Lee's amended complaint appears to be alleging that, in addition to technical deficiencies, Dawson's sworn testimony regarding whether the complainant provided reliable information on previous occasions was false."); Doc. No. 63-4 at 27. As noted above, Lee did not allege in his amended complaint that this misstatement was intentionally or recklessly made. Even if I were to consider this argument, Lee has not produced any evidence that Fouts or Dawson knowingly and intentionally or recklessly made a false statement.

if not controlling, when a reviewing court assesses 'the totality of the circumstances.'" *Weir*, 414 N.W.2d at 331.

Reliability "may appear by the very nature of the circumstances under which the incriminating information became known." *State v. Drake*, 224 N.W.2d 476, 478 (Iowa 1974). Information from a citizen informant (a witness to or a victim of a crime) is generally reliable. *State v. Post*, 286 N.W.2d 195, 200 (Iowa 1979); *United States v. Wallace*, 550 F.3d 729, 734 (8th Cir. 2008) ("Not only is more weight given to information where officers meet face-to-face with the informant and judge her to be credible, but law enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication the information is not reasonably trustworthy or reliable."). The totality of the circumstances must be considered in assessing the reliability of the information. *State v. Niehaus*, 452 N.W.2d 184, 189-90 (Iowa 1990). The reliability of the information provided should be analyzed under the following factors:

(1)    whether the informant was named

(2)    the specificity of the facts detailed by the informant

(3)    whether the information furnished was against the informant's penal interest

(4)    whether the information was corroborated by other information known to law enforcement

(5)    whether the information was not public knowledge

(6)    whether the informant was trusted by the accused

(7)    whether the informant directly witnessed the crime or fruits of it in the possession of the accused.

*State v. McNeal*, 867 N.W.2d 91, 102-03 (Iowa 2015). "In determining whether a substantial basis existed for finding probable cause, [a reviewing court] is limited to consideration of only that information, reduced to writing, which the applicant presented

to the court at the time of the application for the warrant." *State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004) (citing *Gogg*, 561 N.W.2d at 363). Close cases are decided in favor of upholding the validity of the warrant. *Gogg*, 561 N.W.2d at 364.

Prior to analyzing these factors, I note that the parties dispute how the information made its way into Dawson's affidavit. Fouts recalls that Dawson listened to the recorded interview that Fouts had conducted with the victim. *See* Doc. No. 64 at 3. Dawson did not state whether he listened to the recording. *See* Doc. No. 65-1 at 3. To the extent this is a disputed fact, I do not find it to be material as the affidavit makes clear that Fouts interviewed the victim and that Fouts told Dawson what happened. *See* Doc. No. 63-4 at 22 ("I then traveled to the Monona County Law Enforcement Center where I met Onawa Assistant Chief of Police Jim Fouts and he told me the following. On Sunday, September 13th 2015 Onawa Assistant Chief of Police Jim Fouts interviewed [the victim] with regards to an alleged sexual assault that [the victim] has reported.").

I previously found that four of the seven factors weighed in favor of a finding of reliability when accepting Lee's allegations as true for purposes of the state defendants' motion to dismiss. Doc. No. 39 at 14-15. Those factors (1, 2, 5, 7) continue to weigh in favor of a finding of reliability based on the undisputed evidence of what was presented to the magistrate judge. I previously found that the mistaken endorsement (that the application or sworn testimony supplied in support of the application established the credibility of the information given by the informant because sworn testimony indicated the informant had given reliable information on previous occasions) was not critical to the probable cause determination because the victim was named in the affidavit. *See* Doc. No. 39 at 13.

As I previously found, the majority of the factors weigh in favor of a finding of reliability, particularly because the information came from the victim rather than some other type of informant. Many of the facts Lee relies on to argue the warrant was not supported by probable cause were not included in the affidavit or are inconsistencies between the victim's recorded interview and the affidavit. As mentioned above, Lee did

not allege that any omissions or misstatements in the affidavit were knowing and intentional or reckless. While it may have been apparent from the affidavit that the allegations were not corroborated by any other information known to law enforcement, that is only one factor to consider in analyzing reliability. Moreover, given the circumstances, it is understandable that officers were not able to obtain corroborating evidence without a search warrant. For these reasons and the reasons discussed in my previous order (Doc. No. 39) the undisputed evidence establishes that the magistrate had a substantial basis for concluding probable cause existed for both warrants despite any deficiencies in the applications. Defendants are entitled to judgment as a matter of law on this aspect of Count I.

## C.     *Article I, Section 9 of the Iowa Constitution*

Article I, section 9 of the Iowa Constitution provides in relevant part that "no person shall be deprived of life, liberty, or property, without due process of law." Lee alleges in Count II that defendants violated article I, section 9 by failing to disclose the seized weapon on the inventory and return of service filed with the court. Doc. No. 26 at ¶ 37. He contends that because the weapon was not identified or listed in the search warrant inventory, he could not seek a hearing for an immediate return of the weapon. *Id.* ¶ 39.

As noted above, it is undisputed that Lee's service weapon was "seized" (if at all) by Monona County Sheriff Pratt, not defendants. Moreover, the only evidence Lee has put forward that the service weapon was seized pursuant to a warrant is the ONAWA 0474 exhibit (Doc. No. 63-4 at 53), which has questionable admissibility. *See supra* n.11; Fed. R. Civ. P. 56(c). Of course, if the service weapon was not seized pursuant to a warrant, it would not need to be included on the inventory and return of service. Because Lee has not put forth sufficient evidence from which a reasonable jury could conclude the service weapon was seized by defendants pursuant to a warrant (obligating them to disclose it on the inventory and return of service filed with the court), I find that

defendants are entitled to summary judgment on Count II based on article I, section 9 of the Iowa Constitution.

### D.     *Qualified Immunity*

The state defendants argue they are entitled to qualified immunity because they exercised all due care to follow the law.  In *Baldwin v. City of Estherville*, 915 N.W.2d 259, 260-61 (Iowa 2018), the Iowa Supreme Court addressed the following certified question from this court: "Can a defendant raise a defense of qualified immunity to an individual's claim for damages for violation of article I, § 1 and § 8 of the Iowa Constitution?"  *Baldwin*, 915 N.W.2d at 260.   The Court answered the question as follows: "A defendant who pleads and proves as an affirmative defense that he or she exercised all due care to conform with the requirements of the law is entitled to qualified immunity on an individual's claim for damages for violation of article I, sections 1 and 8 of the Iowa Constitution."   *Id.*   Defendants asserted qualified immunity as an affirmative defense in their answer.   *See* Doc. No. 40 at 4.   However, the question remains whether "all due care" should be determined by the court or whether it is a question for the jury.

Judge Bennett answered that question in *Baldwin*, noting that in other contexts, the Iowa Supreme Court has concluded that qualified immunity is a question of law for the court.  *Baldwin v. Estherville, Iowa*, 336 F. Supp. 3d 948, 955-56 (N.D. Iowa 2018). He also explained that the Iowa Supreme Court may adhere to the Eighth Circuit's approach in which "[q]ualified immunity is a legal question for the court, not the jury, to decide in the first instance, based either on the allegations or, if material facts are in dispute, on the facts found by the jury."  *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).   Judge Bennett concluded that in the absence of genuine issues of material fact, the court should decide the question of "all due care" qualified immunity at the summary judgment stage.  *Baldwin*, 336 F. Supp. 3d at 955 (citing *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 846 (Iowa 2005) in which the court recognized that

"[q]uestions of negligence are ordinarily reserved for the jury," but that summary judgment is proper in "extraordinary circumstances.").

Lee contends he has provided sufficient evidence that Fouts and Dawson acted with malice and recklessness in investigating, obtaining and executing the search warrants. *See* Doc. No. 63 at 16. Lee did not make these allegations in his amended complaint. *See* Doc. No. 26. The state defendants argue that even if I did consider such an argument, they would still be entitled to qualified immunity because the warrant affidavit would still provide probable cause without the allegedly tainted information. Doc. No. 65 at 4-5. This is a separate question from whether they are entitled to summary judgment based on their affirmative defense of qualified immunity.

The relevant question for qualified immunity is whether Lee has demonstrated a genuine issue of material fact as to whether Dawson exercised all due care to conform with the law in investigating, obtaining and executing the search warrants. I find that Lee has met this burden. When viewing the evidence in the light most favorable to Lee, a jury could conclude that Dawson did not listen to the recording, did not speak to the victim himself, did not interview other potential witnesses and did not inquire into the victim's credibility. These facts could support a finding that Dawson failed to exercise all due care to conform with the law.[16] As such, I find that the state defendants are not entitled to summary judgment based on their affirmative defense of qualified immunity.

---

[16] These same facts are insufficient to preclude summary judgment on Lee's claim of a violation of article I, section 8 of the Iowa Constitution because that issue concerns whether there is a genuine issue of material fact as to whether the magistrate had a sufficient basis to conclude that the warrant was supported by probable cause. Lee relied on the technical deficiencies in the warrant, the alleged unreliability of the information provided by the victim and inconsistencies between the warrant and the victim's recorded interview. I found the relevant underlying facts were undisputed, weighed in favor of reliability of the information and provided a substantial basis for the magistrate to conclude that probable cause supported the warrants. This finding has no bearing as to whether Dawson is entitled to qualified immunity concerning his actions in preparing the search warrants. In other words, even though the magistrate had a substantial basis for concluding the warrants were supported by probable cause based on what was presented

## E.    Section 1983 Claims

Pursuant to 42 U.S.C. § 1983, Lee alleges violations of the Second and Fourth Amendments to the United States Constitution against the municipal defendants.[17] Similar to Dawson, Lee has not specified whether he is suing Fouts in his official or individual capacity.  Therefore, it is assumed he is suing Fouts in his official capacity.  *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise it will be assumed that the defendant is sued only in his or her official capacity.").  It is well established that "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."  *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006).  It is also well established that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).  "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Lee's § 1983 claims are based on lack of probable cause supporting the search warrants and failure to timely return Lee's property.  *See* Doc. No. 63 at 5-14.  Lee's amended complaint does not include allegations related to any of the above three theories of municipal liability, nor does the record support any of those theories.  Because there are no facts from which a jury could find municipal liability, the municipal defendants are entitled to summary judgment on the § 1983 claims.

---

in the search warrant applications, it does not necessarily follow that those warrants were prepared with all due care to conform with the requirements of the law.

[17] I previously dismissed these claims as alleged against the state defendants.  *See* Doc. No. 39 at 8-9.

## VI.    CONCLUSION

For the reasons stated herein, the municipal defendants' motion (Doc. No. 50) for summary judgment and the state defendants' motion (Doc. No. 51) for summary judgment are **granted**.  Because this order disposes of all pending claims, judgment shall enter in favor of the defendants and against the plaintiff.  The Clerk shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 12th day of July, 2019.

_____
Leonard T. Strand, Chief Judge